# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

UNITED STATES OF AMERICA      )
                                 )
      v.                    )
                                 )    **Criminal Action No. 2017-0031**
WILLIAM PAYNE,            )
                                 )
        Defendant.      )
_____)

Attorneys:
**Daniel H. Huston, Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Ronald E Russell, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's "Motion for Revocation or Amendment of Detention Order" (Dkt. No. 8); Defendant's "Notice of Appeal of Detention Order" (Dkt. No. 19); the Government's "Response in Opposition to Defendant's Motion for Revocation or Amendment of Detention Order" (No. 17-26, Dkt. No. 37); Defendant's "Motion to Accept the Affidavit of Joseph James in Lieu of His Testimony for the Release of William Payne" (Dkt. No. 49); and Defendant's "Supplement to Motion Appealing Detention Order" (Dkt. No. 50).[1] Essentially, Defendant seeks to reverse the Magistrate Judge's Order of May 22, 2017, granting

---

[1]  A criminal Complaint was initially filed against Defendant in this matter under Criminal Case Number 1:17-cr-00026 ("No. 17-26"). A Grand Jury subsequently returned a three-count Indictment against Defendant and the indicted case bears Criminal Case Number 1:17-cr-00031 ("No. 17-31"). Except when otherwise noted, all reference to filings herein pertain to No. 17-31.

the Government's Motion for Detention. This Court held an evidentiary hearing on February 26, 2018 and two status conferences with the parties, on December 20, 2017 and July 18, 2018, repetively. For the following reasons, the Court will reverse the Detention Order and grant Defendant's release with conditions.

## I.    FACTUAL BACKGROUND[2]

Defendant is charged by Indictment with three counts: (1) Receipt of a Firearm by an Unlicensed Person in violation of 18 U.S.C. §§ 922(a)(3) and 924(a)(1)(D); (2) Possession of a Firearm by  a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (3) Possession of Ammunition by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The Government moved to detain Defendant on May 21, 2017 (No. 17-26, Dkt. No. 6), and a detention hearing was held before Magistrate Judge George W. Cannon Jr., on May 22, 2017. To support probable cause for the charges against Defendant and his detention, the Government relied on an affidavit submitted by Special Agent Nathaniel R. Copping ("SA Copping") of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), which was filed with the Criminal Complaint. (Detention Hearing Tr., 3:16-17, May 22, 2017, Dkt. No. 43) ("Det. Hr'g Tr.").

SA Copping's Affidavit states that on May 16, 2017, officers with the U.S. Customs and Border Protection ("CBP") inspected a pallet of boxes in the Tropical Shipping warehouse located in St. Croix, Virgin Islands. (Dkt. No. 1-1 ¶ 3). A company called "EB Waxing Supply" in Davie,

---

[2]  The Court bases the factual background on the record established at the detention and evidentiary hearings and on the filings before the Court. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant is presumed innocent until proven guilty. The facts discussed herein are alleged; they are not conceded or proven beyond a reasonable doubt to the factfinder.

Florida was the addressee, and the pallet was addressed to "C&J Autokare," in Kingshill, Virgin Islands on St. Croix. *Id*. Inside the pallet, CBP officers found a box containing a KEL TEC PLR-16 Pistol concealed among various metal tools inside the box. *Id*. ¶ 4. Ammunition and an extra magazine for the pistol were discovered in other boxes on the pallet. *Id*. CBP notified HSI duty agent, SA Copping, who then met with CBP officers to inspect the items at CBP Airport Cargo located in Henry E. Rohlsen Airport. *Id*. ¶ 5.

To determine the owner of the firearm, law enforcement arranged for a controlled delivery of the pallet. *Id*. ¶ 6. On May 17, 2017, Defendant and an individual named Joseph James ("James") came to the Tropical Shipping warehouse and picked up the pallet. *Id*. Once the pallet was placed in James' truck, officers arrested both men. *Id*.

HSI took both Defendant and James back to their office and interviewed them. *Id*. ¶ 7. During his interview, James, owner of C&J Autokare, stated that he had offered to include some of Defendant's boxes in a shipment of auto care equipment that he had sent from Florida to the Virgin Islands. *Id*. ¶ 8. James stated that he had no knowledge of a gun or ammunition in any of the boxes. *Id*. James later identified the boxes in which the pistol and ammunition were found as belonging to Defendant. *Id*. ¶ 9. After James identified the boxes on the pallet, law enforcement authorities noticed that one of the boxes—which was identified as belonging to Defendant and contained the pistol—bore a shipping label with the name "William Payne" on it. *Id*. ¶ 10.

During his interview, Defendant denied knowledge of the weapon or having delivered boxes to James for transportation to the Virgin Islands. Defendant is not a licensed firearms importer, manufacturer, dealer, or collector. *Id*. ¶ 13. When officers asked about his criminal record, Defendant cited a single juvenile incident. *Id*. ¶ 11.

## II.    PROCEDURAL BACKGROUND

### A.    May 22, 2017 Detention Hearing

The Government argued that Defendant was a flight risk due to his "ties" in New York and Florida (Det. Hr'g Tr. 8:4-10), and that Defendant's criminal history, which dated back to 1998, demonstrated a "history [] of not abiding by any court conditions." *Id*. at 7:14-15.[3] The Government further argued that Defendant posed a danger to the community because he is a felon who attempted to obtain a firearm. *Id*. at 7:14-23.

In contrast, Defendant argued he was not a flight risk because he did not possess ties anywhere outside the United States. *Id*. at 8:13-21. Defendant asserted that while he had a "number of contacts" with law enforcement, he has had only convictions for non-violent crimes, i.e., drug convictions, *id*. at 9:3-15, and that his last conviction was in 2011 for a traffic violation. *Id*.[4] Thus, Defendant argued that nothing in his criminal history suggested he was a danger to the community and requested that the Court release him to the custody of his mother, Zoraida Casanova. *Id*. at 10:1-3. Ms. Casanova, as Defendant's proffered third-party custodian, testified that Defendant resided with her prior to his arrest. *Id*. at 4:15-6:24.

Magistrate Judge Cannon granted the Government's motion to detain Defendant on the grounds that he was a danger to the community and a "significant risk of flight" due to: (1) the weight of evidence against him; (2) the lengthy potential period of incarceration he faced if

---

[3] For example, the Government pointed to an instance where Defendant's probation was revoked, another instance where he failed to appear, and instances where several of his convictions had adjudications that were withheld which, according to the Government, "means that the [D]efendant was to perform certain tasks but did not do that." (Det. Hr'g Tr. 7:8-13; 10:12-18).

[4] According to Defendant, the only indication of violence in his record were charges of resisting arrest (in 1999 and 2001), but argued that in this case there was no information that Defendant resisted arrest. *Id*. at 9:22-25.

convicted; (3) his prior criminal history; (4) his lack of stable employment; (5) his lack of financially responsible sureties; (6) his prior failure to appear in court as ordered; and (7) his prior violations of probation, parole, or supervised release. (No. 17-26, Dkt. No. 9 at 2-3).[5]

## B.   July 12, 2017 Order and Defendant's Motions for Revocation and Appeal

A procedural tangle of court filings followed the Detention Order. On June 29, 2017, Defendant filed a "Motion for Release," arguing that he was not a flight risk or a danger to the community, (No. 17-26, Dkt. No. 23 at 1-2), which the Government opposed on July 7, 2017. (No. 17-26, Dkt. No. 26). Magistrate Judge Cannon construed Defendant's "Motion for Release" as a motion to reopen the detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(B) (No. 17-26, Dkt. No. 31 at 2), which allows a detention hearing to be reopened based upon new evidence. But Magistrate Judge Cannon noted that the only new evidence Defendant offered was a new third-party custodian, i.e., Maria Almestica (his aunt). On July 12, 2017, Magistrate Judge Cannon denied Defendant's Motion for Release, finding that a second third-party custodian is not "new" evidence. *Id*.

On July 13, 2017, Defendant filed a "Motion for Revocation or Amendment of Detention Order," which "appeal[ed] the Order entered by [Magistrate Judge Cannon] on July 12, 2017." (17-26, Dkt No. 32 at 1). The Government opposed that motion on July 28, 2017 (Dkt. No. 37).[6]

---

[5]  Magistrate Judge Cannon utilized the standard "Form AO 472 Order of Detention Pending Trial," and identified the reasons for Defendant's detention without further comment. (No. 17-26, Dkt. No. 9).

[6]  On August 29, 2017, Defendant re-filed his "Motion for Revocation or Amendment of Detention Order," under No. 17-31. (Dkt. No. 8). This filing is identical to Defendant's filing on July 13, 2017 under No. 17-26. (Dkt. No. 32). The Government did not re-file its response, and therefore it remained filed under No. 17-26.

On September 15, 2017, Defendant filed a "Motion for [a] Hearing on the Revocation or Amendment of Detention Order" (Dkt. No. 14), requesting a hearing with the Court to discuss its appeal of Magistrate Judge Cannon's July 12 Order.[7] On October 19, 2017, Defendant again filed his Motion for Revocation, but this time styled it as a "Notice of Appeal of Detention Order," and again requested a hearing (Dkt. Nos. 19 and 20). The Notice of Appeal was identical to the previous motions for revocation.

On December 20, 2017, the Court held a status conference to determine how to address Defendant's pending motions.[8] Counsel stated that Defendant was appealing from Magistrate Judge Cannon's May 22 Detention Order—not the July 12 Order, as indicated in Defendant's motions which denied the reopening of the detention hearing. Defendant requested an evidentiary hearing to review his detention and sought permission to call several witnesses, including: SA Copping, two other HSI agents who interviewed Defendant post-arrest, James, Defendant's brother and Defendant's companion. Defendant also sought to offer the testimony of four potential third-party custodians, but whose testimony counsel agreed could be submitted by proffer. The Government urged the Court to decide the appeal on the record because most of Defendant's witnesses were previously available and thus should not be considered "new" evidence. The Government further argued that a record review would avoid the conversion of a hearing into a mini-trial on the merits of the case.

---

[7] Defendant filed the same Motion on October 13, 2017. (Dkt. No. 17).

[8] The period between Defendant's filings and the status conference was marked by two Category 5 hurricanes—Irma and Maria—which hit the Virgin Islands on September 6, 2017 and September 20, 2017, respectively, causing severe damage and destruction. Puerto Rico was also severely impacted. The St. Croix Division of the District Court was closed from September 18, 2017 until November 27, 2017, with all pending matters continued during that period. Federal detainees housed at Guaynabo in Puerto Rico were relocated to facilities in the continental United States.

By Order entered on December 22, 2017, the Court granted Defendant's request for a renewed detention hearing pursuant to 18 U.S.C. § 3145(b). (Dkt. No. 30 at 2). The Court concluded that, while the witnesses whom Defendant sought to present did not constitute "new" evidence pursuant to 18 U.S.C. § 3145(b)—as they were all known to Defendant and available at the time of his original detention hearing—the particular circumstances here warranted an evidentiary hearing at which the parties would be allowed to offer evidence not presented before Magistrate Judge Cannon, in order to ensure the clarity of the record for purposes of the Court's *de novo* review of Defendant's detention. However, to avoid the conversion of the detention hearing into a mini-trial on the merits, the Court limited Defendant's witnesses to SA Copping, James, Defendant's brother and Defendant's companion, and excluded the additional HSI agents. *Id*. at 3.[9] The Court also allowed Defendant to present a proffer as to the testimony of each potential third-party custodian.

### C.     Evidentiary Hearing

The Court held an evidentiary hearing on February 26, 2018.[10] At the hearing, SA Copping testified that, in addition to the events described in his affidavit, law enforcement was able to confirm that the firearm at issue was purchased from a Florida pawn shop. According to SA

---

[9]   The Court concluded that testimony from the additional HSI agents would not sufficiently address whether Defendant is a flight risk or a danger to the community. (Dkt. No. 30 at 3). The Government confirmed that its only witness would be SA Copping.

[10]   The hearing was initially scheduled for January 11, 2018, (Dkt. No. 30) but was rescheduled twice due to requests for continuances from both parties. Initially, the Government requested to continue the matter from January 11, 2018 due to training and the unavailability of its case agent. The Court thus rescheduled the hearing for January 19, 2018. (Dkt. No. 32). Then, at Defendant's request, the hearing was continued a second time due to the unavailability of James, who Defendant stated was an "indispensable witness." (Dkt. No. 36). Thus, the Court rescheduled the hearing to February 26, 2018. (Dkt. No. 40).

Copping, Defendant was captured on video walking into the pawn shop, accompanied by another individual, who, in turn, purchased a firearm. SA Copping testified that the serial number on that firearm matched the firearm found in the box in the shipping pallet that bore Defendant's name. SA Copping further testified that Defendant was also captured on video coming back into the pawn shop the next day and purchasing high capacity magazines of the type compatible with the firearm found in the pallet.[11] According to SA Copping, the sales clerk at the pawn shop identified Defendant as the individual who purchased the magazines and who accompanied the purchaser of a firearm the day before. In addition, SA Copping testified that Defendant was also captured on video in a Florida Walmart purchasing ammunition which was of the type used in the firearm at issue in this case.

With regard to Defendant's criminal history, SA Copping testified that a Permanent Restraining Order (PRO) was issued against Defendant in 2007 in Florida, after Defendant's domestic partner at the time stated that Defendant allegedly threatened her with a .38 caliber firearm. According to the testimony, Defendant allegedly told her that "Orlando was not big enough for the two of them," and that he would harm her with the gun. Defendant's former domestic partner also allegedly received a warning from Defendant's brother, who told her that Defendant was serious.

During cross-examination, SA Copping testified there was no evidence that Defendant purchased the firearm, shipped the firearm to St. Croix, or that he touched, opened, or possessed the box containing the firearm. SA Copping also testified that, during their interview with law

---

[11] Additionally, SA Copping testified that law enforcement found in the shipping pallet a receipt bearing Defendant's signature which listed a purchase of two magazines.

enforcement, both Defendant and James indicated a lack of knowledge regarding the firearm found in the pallet.

On behalf of Defendant, Ms. Casanova—Defendant's mother—testified that, although Defendant was born in New York, he retains no ties there because she brought him back to St. Croix when he was nine months old and he has lived here since that time (except for his approximately 16 years of residence in Florida). Ms. Casanova also testified that Defendant and his former domestic partner have resolved their differences and Defendant is currently supporting his daughter with her. Ms. Casanova and Defendant's current girlfriend, Diane Howard, both testified for Defendant as third party custodians.

Defendant also offered an affidavit by James in lieu of his live testimony. (Dkt. No. 49).[12] In his affidavit, James stated that he has known Defendant "since he returned home to live permanently more than five years ago." *Id*. at ¶ 12. James further stated that Defendant has worked with him for the past five years. *Id*. ¶ 14. James also stated that he does not think Defendant "will leave the island because he came back to settle on St. Croix and planned to stay here permanently," and that Defendant "is not a danger to the community." *Id*. ¶¶ 18, 20.

With regard to Defendant's criminal history, the Court reviewed the Pretrial Services Report provided by the United States Probation and Pretrial Services Office ("U.S. Probation Office"), which showed that Defendant's criminal record consisted of 17 arrests, spanning from 1998 (when he was 17 years old) to 2014. All of the charges against Defendant occurred in Florida. Out of 17 arrests, there were: (1) seven drug arrests, including three convictions;[13] (2) five traffic

---

[12] Defendant explained that James could not attend the hearing because of a family emergency that required him to travel off-island. (Dkt. No. 49 at 1).

[13] The drug convictions were for: "Marijuana Possession Under 20 grams, Grand Larceny, and Resisting Officer with Violence," in 1999, whereby Defendant's probation was revoked;

violations, from 2003-2014, all of which related to driving with a suspended license; (3) an arrest for "Robbery and Aggravated Battery with a Firearm," in 1999, wherein the charges were dropped/abandoned; (4) two arrests for "Grand Theft Auto and Probation Violation," in 2000 and 2001, one of which resulted in a conviction;[14] (5) an arrest for "Petty Larceny," in 2001, which was dismissed; and (6) an arrest for "Failure to Appear," in 2011. The record shows that Defendant's last serious criminal charges were in March and October 2006, involving possession with intent to sell cocaine and marijuana. The record further shows that Defendant's last four offenses, from 2009-2014, all involved traffic violations for driving with a suspended license (with the exception of a "Failure to Appear" charge in 2011).

### D. July 18, 2018 Status Conference

On July 18, 2018, the Court held a status conference and discussed with the parties the conditions that it intended to impose in the event of Defendant's release. Testifying under oath, Ms. Casanova reiterated her willingness to be Defendant's third-party custodian; affirmed that she was willing to ensure that Defendant would abide by the Court's conditions of release; and confirmed that she would report Defendant to the Court if he fails to abide by the conditions. The Court also questioned James, who testified that he is willing to rehire Defendant to work for him full-time as a maintenance worker at C&J Autokare with a schedule of Monday to Saturday from 7:00 a.m. to 6:30 p.m. James also testified that he will supervise Defendant; ensure that Defendant abides by his conditions of release; and report Defendant to the Court if he fails to do so.

---

"Marijuana Possession Under 20 grams and Resisting Officer with Violence 1st degree," in 2001; "Cocaine Sell Schedule II/Marijuana Possession with Intent to Sell MFG or Deliver Schedule I/Cocaine Possession with Intent to Sell MFG Deliver ETC Schedule II Hallucinogen-MFR-Manufacture Prod Cult Hallucinogens," in 2006.

[14] According to SA Copping's Affidavit, one of these charges resulted in a conviction of "Grand Theft of Motor Vehicle," a felony offense in Florida. (Dkt. No. 1-1 ¶ 12).

## III.    DISCUSSION

Defendant requests that this Court reverse Magistrate Judge Cannon's Detention Order. (Dkt. Nos. 8 at 2-3, 19 at 2-3, and 50 at 1-2). Defendant argues that his detention is unwarranted because the Government has not sufficiently demonstrated that he is a flight risk or a danger to the community. *Id.* The Government opposes Defendant's request and argues for keeping Defendant in pretrial detention on the grounds that there are no conditions or combination of conditions that would assure that Defendant is not a flight risk and assure the safety of the community. (No. 17-26, Dkt. No. 37 at 4-8).

For the reasons discussed below, the Court will order Defendant's pretrial release with conditions.

### A.    Applicable Legal Principles

The Court considers Defendant's request for a review of the Magistrate Judge's Detention Order under 18 U.S.C. § 3145(b). Section 3145(b) "requires this Court to make a *de novo* determination of the findings of fact underlying the detention Order." *United States v. Cole,* 715 F. Supp. 677, 677 (E.D.Pa.1998) (citing *United States v. Delker,* 757 F.2d 1390, 1394 (3d Cir.1985)). Nonetheless, the reasons articulated by the magistrate judge for or against detention must be given "respectful consideration." *United States v. Suppa,* 799 F.2d 115, 120 (3d Cir.1986) (quoting *Delker,* 799 F.2d at 1400). In conducting a *de novo* review of a magistrate judge's pretrial detention order, the court may rely on the evidence presented before the magistrate judge, *Delker,* 757 F.2d at 1395, or exercise its discretion to conduct an evidentiary hearing to aid in its *de novo* review, although it is not required to do so. *United States v. Wrensford*, 2012 WL 6028628, at *4 (D.V.I. Dec. 4, 2012) (citing *United States v. Kanawati*, 2008 WL 1969964, at *2 (D.V.I. May 5, 2008)).

In analyzing the factors which bear on the issue of Defendant's pretrial detention, the Court has conducted a *de novo* review of this matter, including the evidence presented at the May 22, 2017 hearing before the Magistrate Judge, the pleadings in this case, the Pretrial Services Report prepared by the U.S. Probation Office, the James affidavit filed on February 25, 2018 (Dkt. No. 49), and the arguments made and evidence presented by the parties at the evidentiary hearing held by this Court on February 26, 2018.[15] The Court has also considered the available conditions upon which Defendant can be released, including the recently reactivated GPS monitoring program. Based on that review, the Court will reverse the Detention Order and release Defendant with conditions.

Under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, a defendant may be detained pending trial if "a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). In making its determination of whether any conditions of release can reasonably assure a defendant's appearance and the safety of others, the Court must consider the factors set forth in 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug

---

[15] The U.S. Probation Office informed the Court regarding (1) the suitability of the residence of Ms. Casanova, who was offered as Defendant's third-party custodian, and (2) Defendant's employment opportunity with James.

or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The burden of persuasion to detain a defendant remains with the Government. "To justify pretrial detention, the [G]overnment must establish risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence." *Kanawati*, 2008 WL 1969964 at *2 (citing, *e.g., United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986) and *United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986)). "A finding of either risk of flight or danger to the community is a sufficient source of authority to detain the defendant." *United States v. Richardson*, 2009 WL 2044616, at *3 (D.V.I. July 9, 2009) (citing *United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.1985)).[16]

## B.    Danger to the Community

Upon consideration of the four factors under 18 U.S.C. § 3142(g), the Court finds that the Government has not established by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the . . . safety of any other person and the community." 18 U.S.C § 3142(e)(1). "In assessing a defendant's danger to the community[,] courts

---

[16] A number of cases in this District have held that "[r]isk of flight and danger to the community are distinct statutory sources of authority to detain, and proof of one ground for detaining a defendant is quite enough, making any discussion of the other ground irrelevant." *Kanawati*, 2008 WL 1969964, at *2 (internal citation and quotation marks omitted); *accord United States v. Peterson*, 2009 WL 1514402, at *3 (D.V.I. May 29, 2009); *United States v. Tyson*, 2008 WL 4415298, at *2 (D.V.I. Sept. 23, 2008); *United States v. Alexander*, 2007 WL 3391417, at *2 (D.V.I. Oct. 26, 2007).

typically look at the nature and circumstances of the crime, the pre-sentence report, the defendant's prior criminal record, pending charges and any other factors indicative of the defendant's propensity to commit crime generally or otherwise to endanger the community." *Abdullahu*, 488 F. Supp. 2d at 439 (citing *United States v. Provenzano, supra,* 605 F.2d at 96).

### 1. Nature and circumstances of the offense

First, the Court considers the nature and circumstances of the offense involved. 18 U.S.C. § 3142(g)(1). It is indisputable that the charges against Defendant are serious. They involve possession of a firearm and ammunition by a convicted felon and receipt of a firearm by a person without a license. (Dkt. No. 1). *See United States v. Tyson*, 2008 WL 45745, at *5 (E.D. Pa. Jan. 2, 2008) (finding that possession of a weapon by a previously convicted felon is a serious charge).

However, while serious, there are no aggravating circumstances here of the nature that often accompanies a finding of detention. *Cf. United States v. Evans*, 2018 WL 317958, at *3 (W.D. Pa. Jan. 8, 2018) (finding that Defendant's charges of possession of a firearm and ammunition by a convicted felon, where Defendant attempted to bring a loaded gun into a nightclub, weighed against his release); *United States v. Davis*, 2010 WL 1484288, at *3 (D.V.I. Apr. 12, 2010) (finding that release not warranted where Defendant, whose charges included possession of a firearm and ammunition by a felon, conducted himself in a way which attempted to harm law enforcement and civilians); *United States v. Thomas,* 2009 WL 2996532, at *4 (D.V.I. Sept. 16, 2009) (stating that "users of firearms in commission of crimes of violence are dangerous in a very real sense" and holding that pre-trial detention was warranted); *Tyson*, 2008 WL 45745 at *5 (finding that the nature and seriousness of Defendant's offense weighed in favor of detention where there was evidence that Defendant, a convicted felon, had fired shots from the firearm found

14

in his possession in a public place endangering the public). Accordingly, the Court finds that, under the particular circumstances here, this factor does not weigh in favor of Defendant's detention.

### 2. Weight of the Evidence

Second, the Court considers the weight of the evidence against Defendant. 18 U.S.C. § 3142(g)(2). If the weight of the evidence is strong against a defendant, this factor weighs in favor of detention. *See, e.g.*, *Flanders*, 2010 WL 4054442 at * 8 (opining that where weight of evidence against defendant is substantial, that fact militates in favor of detention); *Kanawati*, 2008 WL 1969964 at *3 (same).

Here, the weight of the evidence is strong. As a convicted felon, Defendant is not allowed to possess a firearm. At the evidentiary hearing, the Government's witness, SA Copping, testified that Defendant was captured by video on at least three separate occasions: 1) accompanying an associate who purchased a firearm in a Florida pawn shop that had the same serial number as the firearm found in the pallet; 2) returning to the same pawn shop the next day and purchasing high-capacity magazines of the type used in the same firearm; and 3) purchasing additional ammunition at a Walmart that could be used in the same firearm. SA Copping also testified that the firearm was contained in a box with a shipping label addressed to Defendant, and that a receipt for the ammunition signed by Defendant was also inside the pallet. SA Copping further testified that James told officers that the boxes which contained the ammunition and firearm belonged to Defendant. In addition, during HSI's controlled delivery of the firearm, Defendant arrived to pick up the pallet with James. Accordingly, because the evidence against Defendant is substantial, this factor weighs in favor of detention.

### 3. History and Characteristics

Third, the Court considers Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3). Defendant is 36 years old. He was born in the Bronx, New York, but his mother, Ms. Casanova, testified that she brought Defendant back to the Virgin Islands when he was nine months old. Defendant claims strong family ties in St. Croix, where his mother and other family members reside. Defendant claims that he has resided with his mother since May 19, 2015. However, from about 1998 to 2014, Defendant lived in Florida, where some of his children and at least one former domestic partner resides.

Defendant has a meaningful employment history and relevant job skills. Defendant received a Journeyman's license as an electrician from Florida Middle Tech and reported working as an electrician with various electrical companies in Orlando. In his affidavit, James described Defendant as a "reliable, punctual, capable employee . . . who takes pride in his work." (Dkt. No. 49 ¶¶ 14-15). James noted that Defendant has done work for the Refuge Tabernacle Church, and some wiring work for Morningstar Hill apartments. *Id*. ¶¶ 16-17. Thus, Defendant's ties to the community and his employment potential weigh against detention. *United States v. Wrensford*, 2012 WL 6028628, at *4 (D.V.I. Dec. 4, 2012) (family and community ties contributed to the conclusion that the history and characteristics factor weighed against detention). *See also Tyson*, 2008 WL 45745 at *5 ("ties to the community weigh in favor of granting defendant bail").

Upon review of Defendant's criminal history, the Court notes some troubling aspects in his criminal record. Specifically, Defendant was charged with Resisting an Officer with Violence on two occasions (in 1999 and 2001); had his probation revoked (in 1999); was charged with probation violations on two occasions (in 2000 and 2001); and was charged with a Failure to Appear (in 2011). While such criminal activity would typically be a cause for concern by

demonstrating a refusal to comply with legal proceedings, which would weigh in favor of detention, Defendant's charges here are quite dated—which characterizes Defendant's criminal history overall.

According to the Pretrial Services Report, Defendant's first offense occurred in 1998, when Defendant was 17 years old. Although he has had a total of 17 criminal arrests in the past twenty years,[17] his most serious criminal convictions involving drugs, grand theft auto, probation violations, and resisting an officer with violence all occurred between 1999-2006—more than 10 years ago. Moreover, Defendant's most recent criminal convictions, starting from 2006 and ending in 2014, consisted exclusively of traffic violations for driving with suspended licenses in Florida (with the exception of an arrest for "Failure to Appear" in 2011). Thus, despite its length, the Court finds that Defendant's dated criminal record—especially given the significant time gap between Defendant's last serious criminal offense (a drug charge in 2006 to which he pleaded guilty) and his latest arrest—weigh against his detention. *See Simon*, 760 F. Supp. at 498 (finding that defendant's criminal record did not weigh against him because his only prior felony conviction involved a car theft when he was twenty or twenty-one years old [approximately nine years ago] and he had no further convictions except for a minor traffic offense); *see also United States v. Roberts*, 2015 WL 4092756, at *2 (D. Utah July 6, 2015) (finding that Defendant is not a danger to the community because "[alt]hough the Defendant has a substantial criminal history, it is significantly old").

---

[17] The Court may consider a defendant's arrest history in determining detention. *Thomas*, 2016 WL 890583 at *9 (citing *Delker*, 757 F.2d at 1400).

In addition, at the time of his arrest, there were no pending charges against Defendant nor was he on supervised release. *See* 18 U.S.C. § 3142(g)(3)(B). *Cf. Thomas*, 2016 WL 890583 at *1, 9-11 (finding defendant's detention warranted in part because at the time he committed the alleged criminal activity he was already on supervised release for conspiracy to distribute crack cocaine); *Davis*, 2010 WL 1484288 at *3 (finding that "Defendant's felony conviction and current pending charges in the Superior Court and in this Court persuade the Court that Defendant presents a threat to law enforcement and the community at large"); *Flanders*, 2010 WL 4054442 at *6 (noting that the defendant's charges of aggravated assault and battery and domestic violence that were pending at the time of the alleged offense weighed in favor of finding that there was clear and convincing evidence that the defendant presented a danger to the community). Indeed, as discussed above, Defendant's criminal record shows that his last serious offense—a drug charge—was in 2006, and that since 2009, Defendant's further brushes with the law were limited to traffic violations. Thus, in totality, Defendant's criminal history does not weigh in favor of his detention.

In sum, Defendant's demonstrated family and community ties, past and potential future employment, job skills, and dated criminal record do not weigh in favor of Defendant's detention.

### 4. Nature and Seriousness of Danger to the Community If Released

Finally, the Court considers the nature and seriousness of the danger to any person or the community if Defendant were to be released. 18 U.S.C. § 3142(g)(4). While the illegal possession of a firearm by a felon certainly poses a substantial risk of harm to the community, courts have found that this factor weighed more strongly in favor of detention where aggravating circumstances were present. Such was the case in *Tyson*, where defendant was shown to have a "proclivity to fire weapons in populated [] areas" and endanger others. *Tyson*, 2008 WL 45745 at *6 (finding that defendant's motivation to retaliate as a victim of a drive-by shooting and his

potential access to other weapons weighed in favor of detention); *see also Evans*, 2018 WL 317958 at *3 (finding that defendant's conduct in bringing a loaded firearm to a nightclub and his admission that he needed the firearm to protect himself as a former gang member demonstrated that defendant posed a danger to the community at large). Unlike the cited cases above, there are no factors here surrounding the alleged circumstances of the offense or otherwise, which suggest that Defendant would pose a danger to the community if released.

With regard to the restraining order issued against Defendant in 2007 due to threats involving a firearm that he allegedly made to a former domestic partner, the fact that it was a lone incident which occurred eleven years ago does not sufficiently demonstrate by clear and convincing evidence that Defendant is a danger to the community. *Cf. Thomas*, 2016 WL 890583 at *9-11 (finding defendant's detention warranted for a charge of possession of a firearm and/or ammunition by a felon partly because defendant had a history of domestic violence, which included recent assaults on at least two former girlfriends and his minor child). Defendant here had a permanent restraining order issued against him eleven years before the instant offense and his criminal record since then does not evince further instances of assault or violence towards his domestic partners or any other individuals.

Accordingly, due to a lack of sufficient evidence to demonstrate that Defendant poses a danger to the community, the Court finds that this factor does not weigh in favor of Defendant's detention.

### 5. Conclusion as to Whether Defendant Posed a Danger to the Community

As discussed above, the Court finds that the circumstances here as a whole do not favor Defendant's detention. Notably, the Court has found that only one of the four factors—weight of the evidence—weighed in favor of detention. In light of the foregoing, the Court finds that the

Government has failed to demonstrate by clear and convincing evidence that there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community. Therefore, pretrial detention is not warranted based on this prong of 18 U.S.C. § 3142(e).

**B.     Risk of Flight**

Meanwhile, "[t]he purpose of a Section 3142(e) risk of flight determination . . . is to secure the appearance of the accused at trial." *Himler*, 797 F.2d at 161-62 ("Mere opportunity for flight is not sufficient grounds for pretrial detention"); *Gov't of Virgin Islands v. Leycock*, 678 F.2d 467, 469 (3d Cir. 1982) ("If the opportunity for flight were a reason to deny bail, virtually any defendant living in an area served by interstate public transportation could be denied bail for that reason"). Judicial officers determining whether a defendant is a flight risk are guided by the factors set forth in Section 3142(g). *Himler*, 797 F.2d at 161. The Government must prove a defendant is a risk of flight by a preponderance of the evidence. *Himler*, 797 F.2d at 161. After considering the record as a whole and the § 3142(g) factors, the Court concludes that the Government has not established such a risk with respect to Defendant in this case.

In arguing at the evidentiary hearing that Defendant was a flight risk, the Government cited his ties outside the Virgin Islands (in both New York and Florida) and posited that the amount of time he was facing on the instant charges (which was up to five years for Count One and up to 10 years each for Counts Two and Three) motivates him to flee. However, the record shows that despite being born in New York, Defendant retains no ties there. The testimony from Ms. Casanova indicates that she brought Defendant to St. Croix at the age of nine months. Thus, according to the record, the only ties he has outside the Virgin Islands is in Florida, where he resided for

approximately 16 years and where some of his children and at least one former domestic partner reside.

While the Court recognizes that Defendant's ties to Florida and the severity of his sentence are factors that weigh in favor of a risk of flight, they do not do so by a preponderance of the evidence because other factors weigh more strongly against such a conclusion.

The fact that Defendant's mother, aunt, and girlfriend reside in St. Croix and are willing to serve as third-party custodians provides support for Defendant's claim that he is not a flight risk. *Richardson*, 2009 WL 2044616 at *3. *Cf. United States v. Griffin*, 2007 WL 510140, at *3 (W.D. Pa. Feb. 12, 2007) (detaining defendant who, among other things, had only lived in the jurisdiction for three years, lived alone with her minor daughter, and was unemployed). Further, given Defendant's ties to the community, including his residence in St. Croix, his history of employment, and his employer's commitment to continue employing him if he is released, the facts presented by the Government fail to establish a risk of flight by a preponderance of evidence.

In addition, as noted above, while there are some troubling aspects in Defendant's criminal history—including his charges of resisting arrest (in 1999 and 2001), probation violations (in 2000 and 2001), and a charge for failure to appear (in 2011)—there is no evidence that Defendant has in the past tried to flee to evade charges. *Davis*, 2010 WL 1484288 at *3; *United States v. Rice*, 2017 WL 6349372, at *8 (W.D. Pa. Dec. 13, 2017). Moreover, because Defendant's criminal history is quite dated, it does not sufficiently demonstrate that Defendant is in fact a flight risk. *See Evans*, 2018 WL 317958 at *2 (finding defendant was not a flight risk despite his two prior convictions for escape because they occurred twenty years ago). Under these circumstances, the Court cannot conclude that it is more likely than not that defendant would flee if released pending trial. *Rice*, 2017 WL 6349372 at *8.

In sum, after considering the record as a whole and the § 3142(g) factors, the Court concludes that the Government did not prove by a preponderance of the evidence that Defendant posed a flight risk that cannot be addressed by any "condition or combination of conditions" of release. Accordingly, the Court finds that the circumstances here warrant Defendant's release.

## V.    CONCLUSION

For the foregoing reasons, the Court finds, based on its *de novo* review, that the Government has not made the requisite showing to support the Magistrate Judge's conclusions in the Detention Order. Accordingly, the Court will grant Defendant's "Motion for Revocation or Amendment of Detention Order" (Dkt. No. 8) and associated filing (Dkt. No. 49).

An appropriate Order accompanies this Memorandum Opinion.

Date: July 23, 2018

_____/s/_____
WILMA A. LEWIS
Chief Judge